UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) ) |  |
| v. | ) ) ) | Criminal No. 4:04-cr-40002-NMG |
| JOSEPH DIFLUMERA | ) ) ) |  |

**DEFENDANT JOSEPH DIFLUMERA'S
<u>SENTENCING MEMORANDUM</u>**

**I.     INTRODUCTION**

Defendant Joseph DiFlumera ("DiFlumera") submits this sentencing memorandum in connection with his sentencing hearing scheduled for **December 16, 2005.**  Specifically, the parties in this case have entered into a Plea Agreement and agreed, pursuant to Fed. R. Crim. P. 11(c)(1)(C), to a term of imprisonment of 46 months; a fine within the United States Sentencing Guideline ("Guidelines") range unless the Court determines that DiFlumera lacks sufficient funds to pay a fine; a mandatory special assessment of $600; and, a term of supervised release of not more than two years. *See* **Ex. A**.  Accordingly, DiFlumera respectfully submits that the just and appropriate sentence in this case be a term of imprisonment of 46 months (with a recommendation that it be served at FMC/FPC Devens); a period of supervised release of two years; no fines, forfeiture, or restitution; and, a special assessment of $600.

**II.    BACKGROUND**

DiFlumera was born and raised on a farm in a lower-income residential neighborhood in Milford, Massachusetts. He was the younger of two children born to Pasquale and Helen DiFlumera. However, when DiFlumera was ten years old his brother, Nicholas, died of pneumonia. DiFlumera also suffered some sexual and physical abuse at home. At the age of seventeen, DiFlumera enlisted in the United States Air Force and went on to serve three years until he was honorably discharged. DiFlumera then married Jeanette DeForge shortly after being discharged from the Air Force. DiFlumera and his wife had four children together and, while they divorced in 1976, they have remained very close. Ms. DiFlumera posted her house in support of DiFlumera's release in this case and DiFlumera often stays with her when he comes from Florida to visit the children. One of DiFlumera's children, Joseph DiFlumera Jr. (along with his wife and child), currently resides in Florida near his father. DiFlumera's other two children, Lisa (along with her husband and child) and Laura (who suffers from Downs Syndrome) reside in the same house as their mother in Agawam, Massachusetts. DiFlumera lost a daughter named Barbara to cancer in 2000.

As demonstrated by the numerous letters submitted in support of him, DiFlumera is a very kind and generous person. *See* **Ex. B**. Specifically, these letters show that DiFlumera is a deeply religious man who cares very much for his family. There are numerous members of the law enforcement community who not only are impressed by DiFlumera's character but also consider him a friend. One particular friend, Jack Ferris, was in the Worcester Police Department for thirty years and retired as a Captain. As Captain Ferris mentions in his letter, though his own children only came to visit him four

or five times a year at the assisted living facility, DiFlumera came to visit him three or four times a month, and would take him out to eat, shop for him, and make sure he has everything he needs. DiFlumera also acted as the sole guardian to his cousin, Jean Castignaro, who resided at an assisted living facility. The letter from the facility's owner describes how DiFlumera came to Massachusetts to visit her often and would provide her with clothing, medical care, money, and other such items. In addition, these letters mention DiFlumera's deep involvement with the Special Olympics and his dedication to his own child with a developmental disability. Lastly, Scott L. Macey, President of the United Food and Commerical Workers Union ("UFCW"), still continues to praise DiFlumera's strong work ethic, his generosity, and his leadership skills.

   DiFlumera is now seventy-one years old and in very poor health. DiFlumera is 5'6" tall and weighs approximately 300 pounds. He suffers from serious asthma, breathing difficulties, sinus headaches, acid reflex, leg cramps, high blood pressure, prostate problems, and gout. For these conditions, DiFlumera takes Flovent, Nasacort, liquid Albuterol, and one or two inhalers. DiFlumera also frequently suffers from pneumonia and has a condition whereby he regularly experiences difficulty controlling his bladder. In addition, recently, DiFlumera has suffered from arthritis in his back, spine, and ankles, difficulties with his equilibrium, and a condition whereby he loses oxygen at night and for which his physician has put him on oxygen at times.

   DiFlumera has also had a serious gambling addiction for a very long time. In a report prepared for this case, Dr. Lance Dodes, M.D., an expert on gambling addiction and an Assistant Clinical Professor of Psychiatry at Harvard Medical School, states that DiFlumera suffers from a Diagnostic and Statistical Manual 4 ("DSM-4") diagnosis of

Pathological Gambling. *See* **Ex. C**. Dr. Dodes explains that, while Pathological Gambling is determined, according to the DSM-4 by "'persistent and recurrent maladaptive gambling behavior as indicated by five (or more)" of a list of 10 possible indicators," DiFlumera actually meets every one of the ten criteria. *See* **Ex. C**, at 2. Finally, Dr. Dodes states that DiFlumera's "illegal activities were associated with a need for money to finance increasing levels of compulsive gambling and its attendant losses . . .," and that "[s]uch illegal acts are so common in Pathological Gambling that they are one of the criteria of its diagnosis." *See* **Ex. C**, at 3-4.

This offense arose from DiFlumera's position as the Executive Assistant Director to former UFCW International President Douglas Dority. In 1992, Joe Fusco ("Fusco"), an acquaintance of DiFlumera's who was a grocery distributor to the Victory Distributors, Inc. ("Victory") grocery store chain, approached DiFlumera with a proposition. Fusco explained to DiFlumera that Victory would pay him a certain amount of money per store each year to not be organized by DiFlumera's union. DiFlumera took Fusco up on this proposition and received payment directly from Victory in this manner until he was arrested in 2003. Also, after DiFlumera retired from the UFCW in 1995, DiFlumera was brought on as a "consultant" to Victory and was paid for those purported services until his arrest in 2003. While DiFlumera does contend that he provided Victory with some legitimate services over the years, he recognizes that his actions here were wrong and that he deserves to be punished.

DiFlumera has now accepted responsibility, offered a plea of guilty, and sought to fully cooperate with the Government. On September 26, 2005, DiFlumera offered a plea of guilty to five counts of mail fraud, 18 U.S.C. § 1341, and one count of wire fraud, 18

4

U.S.C. § 1343. While there was some disagreement with the Government over the nature and extent of DiFlumera's wrongdoing in this case, DiFlumera sought to fully cooperate from the moment of his arrest. Between the time of his arrest and the time of his offer of a guilty plea, DiFlumera participated in no less than four proffer sessions. In addition, DiFlumera sought on numerous occasions to actively provide the Government with information on potential new matters.

### III.  ARGUMENT

#### A.  Term of Imprisonment

The Plea Agreement and Presentence Report provide the just and appropriate term of imprisonment in this case. Under the Guidelines in effect at the time of the offense (issued November 1, 2002, and amended by the April 30, 2003 supplement), the Plea Agreement and the Presentence Report start with a base offense level of 6 pursuant to U.S.S.G. § 2B1.1(a). They both then add 16 levels for the specific offense characteristic, pursuant to U.S.S.G. § 2B1.1(b)(1)(I), a 2 level enhancement for abuse of a position of trust, pursuant to U.S.S.G. § 3B1.3, and subtract 3 levels for acceptance of responsibility. This calculation results in a total adjusted offense level of 21, and, with DiFlumera's criminal history category of II, a Guideline range of 41 to 51 months.[1] Accordingly, DiFlumera respectfully requests that the Court accept his guilty plea, under Fed. R. Crim. P. 11(c)(1)(C), and impose a term of imprisonment of 46 months.

---

[1] Absent a plea agreement, the Guidelines would only be advisory to the determination of an appropriate sentence in this case. Under *United States v. Booker*, 543 U.S. 220 (2005), the Guidelines are merely one factor to consider under 18 U.S.C. § 3553(a). The primary directive of § 3553(a) is for courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)." Those purposes include the need to "reflect the seriousness of the offense, promote respect for the law, and to provide just punishment for the offense," "afford adequate deterrence to criminal conduct "protect the public from further crimes of the defendant," and "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." Section 3553(a) further directs courts to consider, among other factors, "the nature and circumstances of the offense and the history and characteristics of the defendant" as well as "the kinds of sentences available."

B.  **Economic Penalties**

1.  **Fines**

The Guideline fine range here, with an offense level of 21, is $7,500 to $75,000. As demonstrated in the Presentence Report, DiFlumera does not have the financial ability to pay even the minimum fine of $7,500. *See* PSR, ¶¶ 140-146. DiFlumera has suffered from a gambling addiction for a long time, and his liabilities now well exceed his assets. Moreover, DiFlumera will be incarcerated as a result of this offense and will, accordingly, be unable to generate any income for the next few years. Thus, DiFlumera would respectfully request that no fine be imposed.

2.  **Forfeiture/Restitution**

The Government is not seeking any forfeiture or restitution in this case. The money involved here consisted of illegal payments made by Victory, and was ultimately gambled away by DiFlumera. The payors of these amounts, who themselves engaged in criminal wrongdoing, were granted immunity for their testimony. The Government, wisely, is not seeking to assist these individuals to recoup these monies. As such, DiFlumera respectfully requests that no forfeiture or restitution penalty be imposed.

3.  **Special Assessment**

Finally, DiFlumera understands that a mandatory special assessment of $600 will be imposed under 18 U.S.C. § 3013.

C.  **Facility Recommendation**

While DiFlumera recognizes that it is ultimately the determination of the Bureau of Prisons, he would request the Court's recommendation that he be designated to FMC/FPC Devens. FMC/FPC Devens has both an administrative facility housing male

offenders requiring specialized or long-term medical care and a satellite camp housing minimum-security male inmates. DiFlumera is uniquely qualified for a designation to FMC/FPC Devens given his record, his nonviolent past, his medical needs, and his family, including a daughter with special needs, in the immediate area. Moreover, given his age and health, it is uncertain whether DiFlumera will even live to serve out his sentence. Hence, it would be especially important for him to be close to his family – both for his sake as well as his family's sake, and in a medical facility that is equipped to address his medical needs. DiFlumera would therefore respectfully request that this Court recommend him for a designation to FMC/FPC Devens.

## IV.     CONCLUSION

For the foregoing reasons, DiFlumera respectfully submits that the just and appropriate sentence in this case be a term of imprisonment of 46 months (with a recommendation that it be served at FMC/FPC Devens); a period of supervised release of two years; no fines, forfeiture, or restitution; and, a special assessment of $600.

Respectfully submitted,

JOSEPH DIFLUMERA
By his attorneys,

/s/ Paul V. Kelly
Paul V. Kelly
Nicholas A. Klinefeldt
KELLY, LIBBY & HOOPES, P.C.
175 Federal Street
Boston, MA. 02110
(617) 338-9300

December 13, 2005